**BILLINGTON v. STATE LIFE INS. CO.**
No. 13263.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 8, 1935.

Rehearing Denied Dec. 20, 1935.

Perkins & Culbertson, of Fort Worth, for appellant.

William M. Short and James E. Whitmore, both of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

On February 15, 1926, Joe W. Billington and the State Life Insurance Company entered into the following written agreement:

"This agreement made the 15 day of February A.D. 1926, between the State Life Insurance Company of Indianapolis, Indiana, party of the first part, and Joe W. Billington, of Fort Worth, Texas, party of the second part, witnesseth:

"First: The said party of the first part hereby appoints the said party of the second part its Agent, for the purpose and with the authority only of procuring applications for insurance on the lives of individuals, and forwarding the same to the party of the first part, or such persons as may be designated by it, and to collect, at the time of taking applications or upon delivery of policies, first year premiums. The party of the second part hereby agrees to remit promptly to said party of the first part, or such person or persons as may be designated by it, all premiums, when collected, less the commissions herein allowed; and also to remit promptly all collections or any application declined or postponed by said Company, or upon which a policy has been issued which he fails to deliver to the satisfaction of the insured; and the said second party agrees to hold securely all commissions on any application taken hereunder, in trust, separate and distinct from all other funds, until the policy applied for is fully and satisfactorily delivered and generally comply with the instructions of party of the first part, and also with the instructions contained in the rate book. It is agreed that when policies are returned for cancellations as 'not taken' which have been issued as applied for, the party of the second part

shall pay the medical examination fee incurred by the party of the first part.

"Schedule of Commissions on First Year Premium only as they are paid in cash. * * *

"Form of Policies Covered by This Contract.

"Ordinary Double Indemnity.     ·

"(Here follows designation of different forms of policies and commissions to be paid on each.)

"Renewal Commissions.

"Second: In consideration of his remaining in the service of the Company in Newsom and Moore territory and under their supervision and assisting in the preservation of the Company's business, the party of the second part shall receive renewal commissions on gross renewal premiums received in cash by the Company on all insurance written by him, except as hereinafter provided, as follows: 5% for a period of fifteen years, except on non-participating policies. All nets to be paid to Newsom and Moore within 30 days from the date of policy.

"No renewals shall be paid to the party of the second part unless the said party shall write and pay for $100,000 of insurance on the annual basis each calendar year (pro rata first year).

"Should the party of the second part discontinue service with The State Life Insurance Company, or this contract be terminated by the party of the first part for any cause, all renewal commissions herein provided for shall immediately cease.

"Third: This contract shall not be terminated by the party of the first part, except upon failure or refusal of the party of the second part to comply with its provisions, and also to write every three months an average of not less than $8333 of paid-for insurance per month, in any of which events this contract may be terminated by the party of the first part.

"In witness whereof, the parties hereto have hereunto affixed their respective signatures the day and year first above written.
"(Signed)   Newsom & Moore
           "For Party of the First Part
"(Signed)   Joe W. Billington,
           "Party of the Second Part.

"Witness Present: (Signed) E. K. Hull

"This contract shall not go into effect until approved by the President or Vice-President of the State Life Insurance Company.

"Approved: (Signed) H. W. Bennett, President."

After the execution of that contract, Billington proceeded to write insurance for the company and continued to do so until July 8, 1930. While working under that contract, plaintiff procured from Crawford O. Edwards, of Fort Worth, an application, dated August 28, 1929, for a certain participating policy of insurance on his life in the amount of $50,000. That application was accepted by the company, and the policy issued thereupon was in renewal of, and substitution for, three other policies theretofore issued in the aggregate sum of $50,000. The annual renewal premium required of Edwards to keep the policy in effect was $2,527.50, and the premium was duly paid to the company by Edwards. During the latter part of the year 1929, Billington demanded of the company 5 per cent commission of the first premium paid by Edwards; the commission amounting to the sum of $126.37. Representatives of the company expressed a willingness to pay one-half of the commission, and contended that the original policies issued to Edwards had been procured by the joint efforts of Billington and E. L. Moore, now deceased, and therefore one-half of the premium in question was owing to representatives of Moore's estate. Billington refused to accept less than the whole of the commission.

The controversy which thus arose continued until July 8, 1930, at which time Billington wrote the following letter:

"Mr. Robert E. Sweeney, Vice President
    and Agency Mgr., State Life Insurance
    Company, Indianapolis, Indiana.

"Dear Mr. Sweeney: You have completely ignored my letter of December 20, 1929, which was in answer to your letter of December 18, 1929, and was in regard to the renewal commission on Policy #373703 on the life of Crawford O. Edwards. In my renewal statement of July 1, 1930, you did not pay me my full renewal on this piece of business. This is a breach of my renewal contract and will be treated accordingly.

"There are many important instances connected with this particular piece of business, the facts of which will be brought out at the proper time, and, if viewed from the standpoint of fairness and impartiality, will cast quite a different light on the subject.

"As I no longer have a contract with the State Life Insurance Company, you will,

of course, not expect to receive any more applications from me, or renewal cooperation either.

"By you breaking this contract you have matured all the renewals on all the business I have on the books as of July 1, 1930, for the full length of time they are to run. I hope you will not force me to exercise legal action to collect these matured renewals."

After the mailing of that letter, Billington rendered no further service to the company ·of any character, all in accordance with the statements in the letter.

After Billington's services with the company had ceased, the company collected premiums on policies which he had procured and the commission on which he would have been entitled to had he continued in the service.

Billington instituted this suit against the State Life Insurance Company to recover a 5 per cent commission of those premiums, and also $126.37, being the 5 per cent commission collected on the Edwards' policy before he severed his relations with the company.

According to allegations in his petition, which were fully supported by testimony introduced, at the time the contract was executed, plaintiff was employed by the American National Life Insurance Company in the business of writing insurance, and he was induced to give up that employment and accept employment with the State Life Insurance Company at the solicitation of Newsom and Moore, representing the latter company, and upon representations made by them to the effect that his agency for the State Life Insurance Company would be more profitable to him than he could expect to realize from his agency with the American National Life Insurance Company.

According to further allegations and his testimony upon the trial, plaintiff informed Newsom and Moore, defendant's representatives, that he expected his new employment to be permanent.

Plaintiff alleged that the facts just related constituted one of the considerations for the execution of the contract.

In addition to a general denial, the defendant specially pleaded that it did not terminate the contract, but that plaintiff voluntarily discontinued his services, and therefore was not entitled to the commission sued for under the express terms of the contract.

The following are special issues submitted with the findings of the jury thereon:

"L. Do you find from a preponderance of the evidence that the ·$50,000 renewal policy issued on the life of Crawford O. Edwards, being policy No. 373703, was procured solely through the efforts of the plaintiff, Joe W. Billington? Answer: Yes.

"2. Do you find from a ·preponderance of the evidence that prior to the payment of any commission on the $50,000 policy mentioned above, that the defendant company's agents, Newsom & Moore, or either of them, knew that the policy of insurance issued on the life of Crawford O. Edwards for $50,000, being policy No. 373703, was procured solely through the efforts of the plaintiff, Joe Billington, if you have so found? Answer: Yes.

"3. Do you find from· a preponderance of the evidence that the State Life Insurance Company, the defendant, refused to pay to plaintiff, Joe W. Billington, the whole of the commission of $126.37 on the $50,000 policy in question, without reasonable cause? Answer: Yes.

"4. Do you find from a preponderance of the evidence that Joe W. Billington, after signing the contract, being Exhibit A introduced in evidence, declared in substance to E. L. Moore, defendant's agent, that he accepted his employment as permanent? Answer: Yes."

On motion of the defendant, the court rendered judgment awarding plaintiff a recovery for $63.18, one-half of the full amount of the commission due on the Edwards policy, he having already accepted the other half, but it denied a recovery for commissions on all other premiums sued for. Plaintiff has appealed.

The primary basis of plaintiff's whole suit is the contention that he had the legal right to treat the defendant's failure to pay the entire commission of $126.37 on the premium collected on the renewal policy issued to Edwards as a breach of the entire contract and recover not only commission on that premium, but commissions on other premiums collected by the defendant after he had ceased to represent it on policies theretofore procured by him. He makes no claim of termination of the contract by the defendant, or breach thereof, in any other respect, except refusal to pay full commission on the premium on the Edwards policy, and the evidence shows without dispute that the defendant was willing for a continuation of his services as agent, not--

withstanding the controversy with respect to the commission on the Edwards policy. The finding of the jury that the Edwards policy was procured by plaintiff alone undoubtedly established a right of recovery for the full commission of $126.37 for premiums collected on that policy.

■ But we believe it manifest that the defendant's contract to pay plaintiff commissions on policies written by him was necessarily divisible in character, since the procurement of each policy was a separate transaction, wholly independent of all others, and for each breach a separate cause of action would lie. We believe that this conclusion is abundantly sustained by the authorities. El Paso & S. W. R. Co. v. Eichel & Weikel (Tex.Civ.App.) 130 S.W. 922, writ refused, and authorities there cited; Lewis v. New York Life Insurance Co. (C.C.A.) 181 F. 433, 435, 30 L.R.A. (N.S.) 1202; Worthington v. Gwin, 119 Ala. 44, 24 So. 739, 43 L.R.A. 382; 13 Corpus Juris, § 735, p. 658, § 738, p. 659; 6 R.C.L. § 390, p. 1033; 1 Tex.Jur. § 55, p. 672.

We have carefully considered authorities cited by appellant to support the contention that the refusal of the defendant company to pay the commission on the Edwards premium was in legal effect a breach of the entire contract, at plaintiff's election. As we construe them, the contracts involved in those authorities are easily distinguishable from the facts in this case, and we do not believe that they are at variance with the conclusion we have reached with respect to the contract in the case at bar. A review of those authorities and an attempt to point out the distinguishing features of the contracts therein involved would unduly prolong this opinion and is unnecessary.

■ The finding of the jury to the effect that at the time the contract was entered into it was the understanding of the parties thereto that the same would be permanent cannot be given any effect. Testimony to support that finding was incompetent because it would vary the terms of the written contract; there being no pleading that such understanding was omitted from the contract through fraud, accident, or mistake. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533; Southern Surety Co. v. Nalle & Co. (Tex.Com.App.) 242 S.W. 197, 201; Rogers v. Rogers (Tex.Com.App.) 15 S.W.(2d) 1037; 17 Tex.Jur. § 354, p. 794, § 361, p. 806.

■ As shown in the contract, plaintiff's right to renewal commissions depended on his remaining in the service of the company and assisting in the preservation of the company's business, and, further, that no renewals would be paid to him unless he should write every three months an average of not less than $8,333.33 of paid for insurance per month. By his letter of date July 8, 1930, he expressly repudiated that obligation without legal excuse therefor, and thereby precluded himself from claiming any commission on the premiums collected by the company after he ceased his services on policies written by him before he terminated his employment and for which he sued. American National Insurance Co. v. Teague (Tex.Com.App.) 237 S.W. 248; Locher v. New York Life Insurance Co., 200 Mo. App. 659, 208 S.W. 862; King v. Raleigh, 100 Mo.App. 1, 70 S.W. 251; 14 R.C.L. § 42, p. 869; Revised Civil Statutes, art. 2211.

For the reasons stated, the judgment of the trial court is affirmed.