Richard J. FRANKIEWICZ, Petitioner,

v.

NATIONAL COMP ASSOCIATES, Respondent.

No. C–728.

Supreme Court of Texas.

May 19, 1982.

Rehearing Denied June 23, 1982.

Carter, Jones, Magee, Rudberg, Moss & Mayes, Lee M. Taft, Dallas, for petitioner.

Jenkens & Gilchrist, William D. Sims, Jr. and Thomas A. Albright, Dallas, for respondent.

GREENHILL, Chief Justice.

In this suit by Richard J. Frankiewicz to recover commissions on insurance renewal premiums, a summary judgment was entered in favor of the defendant, National Comp Associates (NCA). The Court of Civil Appeals affirmed with one justice dissenting. 620 S.W.2d 762. We reverse because the agency contract contains an unenforceable, unreasonable non-competition limita-

tion; and the withholding of those commissions is tied to the non-competition agreement.

Frankiewicz, an insurance agent, entered into an agency contract with NCA in February 1974. In October 1976, Frankiewicz terminated his relationship with NCA. After a period of three months in which Frankiewicz did not work in the insurance field, Frankiewicz accepted employment with another insurance agency selling a line of insurance which Frankiewicz did not sell for NCA.

NCA, relying upon its contract with Frankiewicz, ceased renewal commissions to Frankiewicz. Frankiewicz brought suit to recover his commissions on renewal premiums. NCA did not seek an injunction or a reformation of the contract.

In withholding the payment of commissions on renewal premiums, NCA relied on Section 26, item 4 of its contract with Frankiewicz:

> 26. ... he shall not, for a period of two years thereafter, ... do any of the following things: ... (4) or to sell for any other insurance company or agency. *The Agent further agrees that, in the event of breach by him of any of the covenants of this Paragraph (26), or any of the covenants of Paragraph (22), he shall forfeit all right to any and all further commissions or other payments that might otherwise be due him hereunder*; and the Agent also agrees that the damages, if any, and remedies at law for such breaches would be inadequate and that, in addition, in the event of the breach by him of any of the covenants contained in this Paragraph (26), the Company may apply to the court of competent jurisdiction for, and shall be entitled to, an injunction by such court to prevent a breach or further breach thereof on the part of the Agent. [Emphasis ours.]

The agreement not to compete thus has a two-year time period, but it does not have a territorial limitation.

The contract also provides that upon its termination, commissions on insurance renewal premiums are payable to the agent if:

18. ... the Agent shall continue to receive renewal commissions as they accrue on policies written by the Agent prior to the termination of this Agreement so long as his Agent's commissions from the Company average at least Ten ($10.00) Dollars per month during each calendar year, and provided the Agent continues to maintain a valid life insurance license. All renewals qualifying for vesting will vest from policy date. Renewal commissions are vested one year for each full year of continuous service up to ten (10) years. After such ten year period renewals will become vested for such period of time that policies remain in force. ...

Those renewals which qualify to vest in the agent are described as follows:

19.(c) After this contract shall have been in effect for (1) year, and the agent is in compliance with section 18 hereof, all renewals shall be considered vested in the agent, and such renewals will be terminable only for cause ....

It is undisputed that Frankiewicz was in compliance with Section 18. The contract had been in effect more than one year. The commissions on renewal premiums, therefore, were vested.

Frankiewicz admitted selling insurance for another insurance company. NCA argues that Frankiewicz violated Section 26, item 4, and it therefore properly ceased commissions on renewal premiums. Frankiewicz's position is this forfeiture provision is overly broad and, as such, is an unreasonable and unenforceable restraint of trade.

▆ An agreement not to compete is in restraint of trade and will not be enforced unless it is reasonable. *Weatherford Oil Tool Company v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 951 (1960). A competition restriction to be valid must contain a reasonable territorial limitation. *Matlock v. Data Processing Security, Inc.*, 618 S.W.2d 327 (Tex.1981); *Justin Belt Company, Inc. v. Yost*, 502 S.W.2d 681 (Tex.1974). The provision in question contains no territorial

limitation; nor is it limited to competing lines of insurance.

The Court of Civil Appeals held that Section 26, item 4 was not in restraint of trade. It referred to its decision in *Bobbitt v. National Comp Associates*, 597 S.W.2d 28, 30 (Tex.Civ.App.—Dallas 1980, writ ref'd n. r. e.). The Court of Civil Appeals in this case construed the *Bobbitt* opinion to hold that Frankiewicz was free to compete as long as he was willing to forego renewal commissions.[1] We decline to follow this reasoning.

▆ Section 26 provides that should Frankiewicz breach a restriction, Frankiewicz "shall forfeit" all further commissions and that National Comp Associates may seek an injunction "to prevent a breach or further breach." However, an injunction would not issue without a reasonable territorial limitation. *Matlock v. Data Processing Security, Inc., supra; Justin Belt Company, Inc. v. Yost, supra.* Similarly, a suit for damages by National Comp Associates would not lie against Frankiewicz. This is clear from our holding in *Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950 (1960).

In *Weatherford Oil Tool Co.*, we confronted the question whether a suit for damages could be predicated on a breach of an unreasonable restraint of trade. For purposes of monetary damages, a restrictive covenant must stand or fall as written. We refused to redraft the contract to render it reasonable and enforceable. We there said at page 953 of 340 S.W.2d: "[S]ince the contract does not contain a reasonable territorial limitation, there is no legal basis for an award of damages for breach of the same."

Section 26, item 4, is also unenforceable under that holding. It contains no territorial limitation on the restriction and is an unreasonable restraint of trade. It cannot provide the basis upon which NCA can suspend Frankiewicz's commissions on renewal

---

1. The *Bobbitt* opinion reflects a contract which had limitations as to time and territory. It cited and relied upon a case in which there

were reasonable limits as to time and territory. *Stancliff v. Southland Life Ins. Co.*, 172 S.W.2d 521 (Tex.Civ.App.—Dallas 1943, no writ).

premiums any more than it could support a claim for damages on the part of NCA.

The summary judgment entered in favor of National Comp Associates is erroneous. The judgment of the Court of Civil Appeals is reversed and the cause is remanded to the trial court for further proceedings.